UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UMAR MUHAMMAD,

       Plaintiff,                    Case No. 1:19-cv-323

v.                                             Honorable Paul L. Maloney

BONITA HOFFNER et al.,

       Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    **I.    Factual allegations**

Plaintiff Umar Muhammad is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan. The

events about which he complains occurred at that facility and the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.

Plaintiff has filed a motion to amend his complaint (ECF No. 12), along with a proposed amended complaint. The Court will grant the motion to amend because Plaintiff can amend his complaint once as a matter of course before it has been served on the defendants. *See* Fed. R. Civ. P. 15(a)(1). Plaintiff's complaint has not been served. Accordingly, the Court will treat the proposed amended complaint (ECF No. 12-1) as the relevant pleading in this case.

In his amended complaint, Plaintiff sues the following current and former MDOC employees from LCF: Warden Bonita Hoffner; Deputy Warden Bryan Morrison; Assistant Residential Unit Supervisor (ARUS) Unknown Marvin; Grievance Coordinator J. Rohrig; and mailroom employees Torrie Strong, M. Stephens, J. Hutchins, and A. Long. He also sues the following employees from URF: Warden Jeffrey Woods; mailroom employee R. Valle; and Inspector Unknown Hough.

Plaintiff alleges that, over the course of several years, he has had problems sending mail. He contends that "most" of his letters have not been delivered. (Am. Compl., ECF No. 12-1, PageID.61.) For instance, while he was incarcerated at URF and LRF from May 2015 to August 2018, Plaintiff sent a total of thirteen letters to an attorney, Sharon McPhail. Five of those letters came back to him with a note stating "no longer at this address returned to sender" or "unable to deliver." (*Id.*) In addition, in April 2018, he sent a "Rule 22 motion" to Justice Kagan at the United States Supreme Court, and two follow-up letters about that motion, but he has received no response. (*Id.*) Plaintiff also wrote three letters Judge Denise Page Hood at the United States District Court for the Eastern District of Michigan in June and July 2018, asking her to investigate

2

his "stolen" mail. (*Id.*) She finally responded to his third letter, indicating that she received only two of the three letters that he sent.

In September 2015, Plaintiff sent a kite to Warden Woods and Inspector Hough at URF, complaining that he was being denied access to an attorney and, thus, access to the courts. Neither of them responded. A few days later, he filed a grievance about the matter. He received no response to the grievance. The following month, he filed a "staff corruption" grievance. (*Id.*, PageID.62.) Still no response.

After Plaintiff transferred from URF to LCF in May 2016, he again wrote to Ms. McPhail, believing that she would "take [his] case," but he received no response. (*Id.*)

On August 5, 2016, ARUS Marvin called Plaintiff to her office and informed him that Ms. McPhail had called the warden and demanded that Plaintiff stop writing her because "she doesn't do criminal appeals." (*Id.*) Plaintiff interpreted this as evidence of a "very cruel and unusual plot against [a] most well behaved inmate," so he filed a grievance about the matter. (*Id.*) The grievance was rejected because it raised an issue that had nothing to do with the MDOC.

In October 2016, Plaintiff found a "prisoner pass" under his pillow that mentioned "legal mail." (*Id.*) On January 3, 2017, he found another one. A few days later, he spoke to Defendant Marvin about the two passes that were left on his bed. She recommended that he send a kite to the inspector. Plaintiff decided to file a grievance instead. He received no response to the grievance, so he filed another one. Again, he received no response.

Plaintiff apparently claims that he is being denied access to the courts and to an attorney "of choice," in violation of his constitutional rights. (*See* Suppl. to Pleadings, ECF No. 14, PageID.68 (describing the nature Plaintiff's action).) He contends that Warden Hoffner is liable because "her name was mentioned" in a grievance and she must have known about his issues.

3

(Am. Compl., PageID.63.) He claims that ARUS Marvin is liable because she "initiated [a] cruel falsehood," in violation of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments. (*Id.*) He further contends that Grievance Coordinator Rohrig is liable for "not investigating the matter," and rejecting Plaintiff's grievance. (*Id.*) Similarly, he claims that Deputy Warden Morrison is liable because he signed his name on Plaintiff's grievance. (In other words, he denied one of Plaintiff's grievances.) Plaintiff sues mailroom employees Strong, Stephens, Long, Hutchins, and Valle because they all signed "mail disbursement receipts" for outgoing mail to attorney McPhail, but "that mail never made it out of the institution." (*Id.*) Plaintiff sues Inspector Hough because Hough "did absolutely nothing" and did not respond to Plaintiff's kite. (*Id.*, PageID.64.) Finally, Plaintiff sues Warden Woods because Woods received a copy of a kite that Plaintiff sent to the inspector. Consequently, Woods "knew or should have known" of the "constitutional violations" against Plaintiff. (*Id.*)

As relief, Plaintiff seeks compensatory and punitive damages. In addition, in a supplement to his complaint, Plaintiff asks for habeas corpus relief under 28 U.S.C. § 2241. (Mot. to Suppl. Pleading to Include Habeas Corpus Relief, ECF No. 14.) In support of his motion to supplement, Plaintiff alleges that he prepared an application for habeas corpus relief in the state courts and gave it to an official at the prison for mailing. That was on April 23, 2019. Since that time, he has not received a response from the state court as to whether his application was received.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

4

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that "most" of his outgoing letters have not been delivered. An inability to send mail potentially implicates Plaintiff's First Amendment rights to freedom of

expression and association. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (noting that prisoners have a First Amendment right to send mail, subject to substantial government interests like "security, order, and rehabilitation"), *overruled on other grounds by Thornburg v. Abbott,* 490 U.S. 401, 413 (1989). In some circumstances, preventing a prisoner from sending mail might deny him his constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

In this case, however, Plaintiff's central claim is conclusory and unsupported. He alleges only a handful of instances, occurring over the course of several years, in which his mail allegedly did not leave the prison. There is no support whatsoever for his contention that "most" of his mail was not delivered. Indeed, in almost all the examples described, Plaintiff apparently *assumes* that his mail was not delivered because he did not receive the responses he expected. It does not necessarily follow, however, that a lack of response means that the mail was not delivered. For instance, an attorney receiving thirteen requests for assistance from the same individual is not obligated to respond to any of them and, is unlikely to respond to more than one of them. Likewise, judges receiving frivolous motions and requests for investigative assistance are unlikely to respond. The fact that one of the judges did respond confirms that some of his letters were delivered. And the fact that the attorney called the prison to ask Plaintiff to stop sending her letters suggests that she did, in fact, receive them. Plaintiff's belief that this request was a falsehood created by Defendant Marvin is pure supposition, as is his broader contention that "most" of his mail was not delivered.

In other words, Plaintiff has alleged only a few, seemingly random, instances of non-delivery of mail. This is hardly a burden on his First Amendment rights. And Plaintiff does not allege any injury to a nonfrivolous legal claim, so he does not state a violation of his right of

6

access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996) (requiring "actual injury" to a "nonfrivolous legal claim" to demonstrate denial of access to the courts).

More importantly, even assuming that "most" of Plaintiff's mail was not delivered, there are no allegations from which to reasonably infer that any of the defendants is responsible for this state of affairs. There are many reasons why a letter might not reach the intended recipient. It could have the wrong address, as some of the notices Plaintiff received would suggest. Or it could be lost in transit through no fault of the prison or its employees. (Indeed, in his original complaint, Plaintiff also sued the United States Postal Service.) Or it could be misplaced due to the simple negligence of a prison official, which does not amount to a constitutional violation or give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 333-36 (1986). In short, Plaintiff's complaint fails to allege more than the "mere possibility of misconduct" by Defendants. *Iqbal*, 556 U.S. at 679. Thus, he fails to state a claim against any of them.

Plaintiff's claim against the defendants who did not work in the mail room and did not actually handle his mail (Defendants Hoffner, Morrison, Marvin, Rohrig, Woods, and Hough) fails for an additional reason. Plaintiff apparently contends that they are liable because they knew about Plaintiff's problem and failed to correct it, or they denied his grievances about the issue. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899;

7

*Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Hoffner, Morrison, Marvin, Rohrig, Woods, or Hough engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

For all the foregoing reasons, Plaintiff fails to state a claim under § 1983.

### III.     Motion to Supplement

Plaintiff has also filed a motion to supplement his complaint with additional allegations and a request to "include habeas corpus relief" as part of his complaint. (ECF No. 14.) Under Rule 15(d) of the Federal Rules of Civil Procedure, a Court may, "on just terms," permit a party to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The Court may permit supplementation "even though the original pleading is defective in stating a claim or defense." *Id.*

In this case, the original pleading (i.e., the amended complaint) is defective in stating a claim, and the supplement is even more so. Consequently, the Court will deny the motion because no purpose would be served by granting it.

In the supplement, Plaintiff alleges that on April 23, 2019, he handed ARUS Dirschall an envelope containing a "state writ of habeas corpus," to be sent to the Branch County Circuit Court. (ECF No. 14, PageID.68.) Dirschall examined the contents of the envelope and approved a disbursement of funds for postage. Three weeks passed and Plaintiff did not receive a

response from the state court, so he sent a letter to the court on May 15, 2019, asking if it had received his writ. Another week passed and Plaintiff had not received a response from the state court, so Plaintiff filed a motion to supplement with this Court. He contends that these circumstances are further evidence that he is being denied access to the courts. As relief, he asks the Court to release him from custody under 28 U.S.C. § 2241.

Plaintiff's supplement fails to state a claim for many of the same reasons that his amended complaint fails to state a claim. The lack of a response by the recipient of his mail does not mean that his mail was not delivered. Furthermore, Dirschall is not named as a defendant in this case, and there are no allegations from which to infer that any of the named defendants are responsible for the alleged failure of Plaintiff's writ of habeas corpus to reach the state court. Thus, the allegations in the supplement do not state a claim under § 1983.

Furthermore, habeas corpus relief is not available in this action. Where a prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). In other words, a prisoner seeking habeas corpus relief should file a habeas corpus petition rather than a civil rights complaint. A federal habeas petition has different exhaustion requirements than a civil rights complaint, has a different respondent, and is subject to different filing fees, different rules of procedure, and a different standard of review. This action is not the proper place for asserting a right to relief under § 2241.

Accordingly, the Court will not permit supplementation of the complaint.

## **Conclusion**

In summary, the Court will grant Plaintiff's motion to amend the complaint. After conducting the review of the amended complaint required by the Prison Litigation Reform Act, the Court determines that the action will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Furthermore, Plaintiff's motion to supplement will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that there is no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: June 21, 2019 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge